CITY OF CLEVELAND, APPELLEE, *v.* RAMSEY, APPELLANT.

(No. 55432—Decided December 27, 1988.)

*Brian Fritz,* assistant city prosecutor, for appellee.

*Reminger & Reminger Co., L.P.A.,* and *Clifford C. Masch,* for appellant.

*Per Curiam.* Defendant, Beverly Ramsey, appeals a judgment of direct

contempt rendered against her in her capacity as keeper of the Mount Sinai Medical Hospital records in Cleveland Municipal Court case No. 88-TRD-5840AB. The trial court found defendant guilty of direct contempt and sentenced her to three days in the workhouse and to pay a fine of $500 and court costs. The jail term was suspended. Defendant filed a timely notice of appeal.

Defendant assigns three errors on appeal:

"I.   The trial court wrongfully and summarily punished Beverly Ramsey based upon a finding of direct contempt.

"II.   The trial court failed to make a finding as to whether Ms. Ramsey's disobedience of the subpoena duces tecum was an intentional act.

"III.   The trial court's imposition of a five hundred dollar ($500.00) fine against Ms. Ramsey exceeds the permissible penalty for a first offense of contempt as set forth in R.C. 2705.02."

Defendant first argues the court erred in finding her guilty of contempt. Defendant's argument is persuasive.

"Direct contempt is 'misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.' R.C. 2705.01. Direct contempt may be punished summarily by the trial court.

"Indirect contempt, on the other hand, is conduct which takes place outside the presence of the court. The court is not usually aware of the indirect contemptuous act when it occurs. When the court is informed that an act of indirect contempt has taken place, the accused contemnor will be given notice and a hearing held on the charge. R.C. 2705.03. Acts constituting indirect contempt may include the following:

" '(A) *Disobedience of, or resistance to, a lawful writ, process, order,* *rule, judgment or command of a court or an officer* [emphasis *sic*];

" '(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

" '(C) *A failure to obey a subpoena duly served,* or a refusal to be sworn or to answer as a witness, when lawfully required [emphasis added];

" '(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

" '(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance.' * * * R.C. 2705.02." (Footnotes omitted.) *In re Carroll* (1985), 28 Ohio App. 3d 6, 8-9, 28 OBR 15, 17, 501 N.E. 2d 1204, 1207-1208.

"Where judges have no personal knowledge of the alleged act of contempt because of its commission beyond the court's actual physical presence, the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to. *State v. Local Union 5760, United Steelworkers* (1961), 172 Ohio St. 75, 82 [15 O.O. 2d 133] * * *." *State, ex rel. Seventh Urban, Inc.,* v. *McFaul* (1983), 5 Ohio St. 3d 120, 122, 5 OBR 255, 257, 449 N.E. 2d 445, 447-448.

In the case *sub judice,* defendant was at Mount Sinai Medical Center well beyond the court's physical presence when defendant allegedly failed to timely honor the subpoena. Failure to obey a subpoena is indirect contempt. See R.C. 2705.02. In addition, failure to appear at or arriving late to a hearing or pretrial is indirect contempt. See *East Cleveland* v. *Reed* (1977), 54 Ohio App. 2d 147, 8 O.O. 3d 277, 376 N.E. 2d 973. See, also, *Wei-*

110

*land* v. *Indus. Comm.* (1956), 166 Ohio St. 62, 1 O.O. 2d 198, 139 N.E. 2d 36. Therefore, defendant's contempt was indirect contempt.

Pursuant to R.C. 2705.03, the court was required to have a charge in writing filed with the clerk's office and give defendant an opportunity to be heard. When defendant untimely appeared with the medical records, the trial court did not afford her such an opportunity before finding defendant guilty of direct contempt, sentencing her to three days in jail and ordering the bailiff to place her in custody. However, the court later that day vacated its prior ruling, fined defendant $500 and sentenced her to three days in jail, and then suspended the jail term. The court vacated its first sentence after giving defendant an opportunity to be heard at a hearing in which she was represented by counsel. At the second hearing defendant was also permitted to have witnesses testify on her behalf.[1] Thus, the court cured its earlier procedural error by holding the hearing and vacating the prior sentence.

Nevertheless, the court erred in several respects in finding defendant guilty of contempt. In discussing these errors it is necessary first to determine whether defendant's contempt was civil or criminal in nature:

"The distinction between civil and criminal contempt turns on the character and purpose of the sanction imposed. Either a fine or imprisonment, or both, may be imposed in civil *or* criminal contempt cases. In the civil context, however, the purpose of the sanction is coercive: that is, it is intended to force the contemnor to com-

ply with the court's order. Compliance, in turn, redounds to the benefit of the civil complainant. See *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250 [18 O.O. 3d 446]. A sanction for civil contempt must allow the contemnor to purge himself of the contempt. *Tucker* v. *Tucker* (1983), 10 Ohio App. 3d 251. Once the contemnor chooses to comply with the court's order, the purpose of the sanction is achieved and the sanction is discontinued.

"A sanction for criminal contempt, by contrast, is a punishment for past refusal to obey a court order. *Schrader* v. *Huff* (1983), 8 Ohio App. 3d 111. No coercive element is present. 'Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court.' *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201, 205 [15 O.O. 3d 221]." (Footnotes omitted and emphasis *sic*.) *In re Carroll, supra,* at 9, 28 OBR at 18, 501 N.E. 2d at 1208; accord *Bd. of Edn.* v. *Hamilton Classroom Teachers Assn.* (1982), 5 Ohio App. 3d 51, 54-55, 5 OBR 146, 150-151, 449 N.E. 2d 26, 31.

In the case *sub judice,* the trial court treated the contempt as criminal contempt. Defendant had failed to appear on time with the medical records of Alfred Sisson. These records purportedly establish whether Sisson was driving under the influence of alcohol or drugs when arrested. As a result, Sisson was discharged.[2] Defendant's sanction for failure to timely comply with the subpoena to bring the records was not intended to force her to comply with the subpoena; rather, it was a punishment for a refusal to timely comply and designed to vindicate the authority of the court. In addition,

---

[1] Mr. Kalin, Executive Vice President of Mt. Sinai Hospital, was permitted to explain the circumstances surrounding defendant's failure to appear.

[2] The case against Sisson was dismissed because the state had been granted several continuances in the past. Also, Sisson was scheduled to go into the hospital for surgery the following Monday.

under the circumstances, it would have been impossible for defendant to purge herself of the contempt.

In a criminal contempt situation guilt must be proven beyond a reasonable doubt. *Carroll, supra; Bd. of Edn. v. Hamilton Classroom Teachers Assn., supra; Pease Co.* v. *Local Union 1787* (1978), 59 Ohio App. 2d 238, 242, 13 O.O. 3d 246, 249, 393 N.E. 2d 504, 507. The record reveals absolutely no evidence of an intentional disobedience of the subpoena. The record reveals defendant telephoned the prosecutor's office to find out if her attendance at Sisson's trial was still required. When the prosecutor's office failed to return her call, she erroneously assumed her presence was no longer necessary. This erroneous assumption does not rise to an intentional act of disobedience. On the contrary, the act of telephoning the prosecutor's office to determine if she was still needed evidences an intent to comply with the order.

Intent is an essential element of indirect criminal contempt. See *In re Carroll, supra.* Defendant's untimely appearance alone does not prove intent to commit contemptuous conduct. See *East Cleveland* v. *Reed, supra.*

Defendant's conviction was based on insufficient evidence since the state failed to prove intent beyond a reasonable doubt:

"[The test for the sufficiency of the evidence] is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson* v. *Virginia* (1979), 443 U.S. 307, 319; *United States* v. *Lincoln* (C.A. 8, 1980), 630 F. 2d 1313, 1316; *Dorman* v. *State* (Alaska 1981), 622 P. 2d 448, 453; *Ridley* v. *State* (1976), 236 Ga. 147, 149, 223 S.E. 2d 131, 132; *State* v. *Sorgee* (1978), 54 Ohio St. 2d 464 [8 O.O. 3d 452]; *State* v. *Robinson* (1955), 162 Ohio St. 486 [55 O.O. 388]." *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 175, 20 OBR 215, 218-219, 485 N.E. 2d 717, 720.

Since there was insufficient evidence with respect to the element of intent, defendant's conviction was not sustained by the sufficiency of the evidence.

In addition, defendant's fine of $500 was excessive. A first offense of contempt carries with it a maximum fine of $250. R.C. 2705.05. In the case *sub judice,* the record reveals no evidence of any prior contempt offenses committed by defendant. Accordingly, the trial court abused its discretion in imposing a fine of $500.

Defendant's assignments of error are well-taken and sustained. Defendant's conviction is reversed based upon the sufficiency of the evidence.

The judgment is reversed and final judgment is entered for defendant.

*Judgment accordingly.*

PATTON, P.J., KRUPANSKY and MATIA, JJ., concur.