Plaintiff-appellant Thereasa Ann Rudduck (hereinafter "wife") appeals the July 23, 1998 Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division, finding her in contempt and imposing a sanction in which she loses all of her right, title, and interest in her share of a stock plan. Defendant-appellee is Gregory Lee Rudduck (hereinafter "husband").
 STATEMENT OF THE FACTS AND CASE
Husband and wife were married on October 17, 1978, in Clintonwood, Virginia. Two children were born as issue of said marriage, to wit: Gregory Lee Rudduck, Jr. (DOB 10/4/79), and Anthony Jason Rudduck (DOB 6/15/81).
On May 7, 1996, wife filed a complaint for divorce in the Licking County Court of Common Pleas, Domestic Relations Division. The matter came on for final hearing on May 23, 1997. On that day, the parties reached a settlement, which was memorialized via Settlement Memorandum signed by wife and husband. The trial court filed a Judgment Entry/Decree of Divorce on June 24, 1997. Wife declined to sign the decree and her attorney, Mark K. Gardner, signed as to form only. Wife did not file any objections to the Settlement Memorandum prior to the filing of the filing of the decree.
On July 30, 1997, wife filed a motion moving the court for an order requiring husband show cause why he should not be held in contempt for his failure to comply with the decree. Specifically, wife alleged husband failed to arrange for the division of his stock and 401-K plans within fourteen days of the filing of the decree; failed to return wife's wedding ring to her; and failed to involve the parties' minor son, Anthony, who was residing with husband, in psychological counseling.
On August 1, 1997, husband filed a motion moving the court for an order requiring wife show cause why she should not be held in contempt for her failure to comply with the decree. Specifically, husband alleged wife caused extensive damage to the marital residence[1], destroyed personal property, and failed to deliver other items of personal property to husband. The trial court granted husband's request for an ex-parte order prohibiting wife from withdrawing any portion of the 401-K plan awarded to her in the divorce.
The trial court scheduled the matter for a hearing before the magistrate on December 29, 1997. On December 22, 1997, wife filed an amended motion to show cause relative to husband's failing to pay his share of the marital debts and his making false statements to wife as to the availability of the funds in the stock and 401-K plans. The magistrate heard two days of testimony on December 29, 1997, and February 13, 1998.[2]
On June 23, 1997, husband arrived at the marital residence with a deputy from the Licking County Sheriff's Office.[3] Wife refused to leave. The following day, counsel for both parties met with the trial court. The court ordered wife to vacate the premises immediately. At approximately 6:30 p.m. that evening, husband returned to the home accompanied by Deputy Jeff Savage of the Licking County Sheriff's Office. When they entered the house, husband and Deputy Savage observed live geese running around inside, which had done considerable damage to the carpeting.
The droppings left by the geese were not the only damage. The contents of a cat litter box were dumped in the fireplace, on the floor, and in the heating vents. The sump pump in the basement was unplugged, causing a flood which damaged or destroyed electronic entertainment equipment and furniture. Profanities were graffitied on hats hanging on the walls. Nails were driven into the wall-to-wall carpeting. The carpet was also spray painted with black "x"s. The curtains were shredded. A cat and her litter of kittens were housed on a mattress which was destroyed as a result. Phone jack and cable television jack wires were cut at the wall.
Outside, trash was strewn in the trees, around the yard, and on the front porch. The lawn had not been mowed in approximately six (6) weeks and was completely overgrown. Brent Thompson, wife's then boyfriend/now husband permitted Eric White, a seventeen year old neighbor, to tear up the lawn with his car prior to wife's vacating the premises. Greg, Jr. told Eric the house was being purposely damaged by cutting cables and damaging drywall. Wife, Greg, Jr., and Thompson denied any knowledge of the damage and did not offer any explanation as to the cause of the damage.
Prior to vacating the marital residence, wife conducted a moving sale on June 14, 1997. While in the area shopping with Debbie Shannon, his girlfriend, and Anthony, husband observed signs for the moving sale. Husband traveled passed the property and noticed personal property, which belonged to him and Anthony, for sale. Husband went to a near-by pay phone and called the Licking County Sheriff's Department. A deputy arrived and accompanied Anthony and Shannon to the residence in order to retrieve
Anthony's belongings. While Eric White was at the sale, Greg, Jr. gave him a golf club and a BB gun. When Jeff White, Eric's father, learned the items belonged to husband and Anthony, he returned them to husband. Wife denied selling any property belonging to husband or Anthony.
At the hearing, husband itemized the items either damaged or missing from the residence and described the physical damage done to the residence. Prior to the contempt hearing, husband visited a number of retail outlets in order to obtain estimates for replacing the damaged and missing items. He also obtained estimates for the electrical repair work and carpet cleaning. He testified, without objection, to damages in the amount of $12,081.84.
At the end of the second day of the hearing, wife objected to the admission of the exhibits husband introduced of the estimates from which he calculated his total amount of damages. The magistrate reserved ruling upon wife's objection. In his decision, the magistrate sustained wife's objection to all of the exhibits except for Exhibit B, a videotape depicting the condition of the marital residence when husband returned on June 24, 1997.
Via Magistrate's Decision dated March 12, 1998, the magistrate found husband was not in contempt regarding the transfer of the wedding ring to wife and the counseling for Anthony, but in contempt for failing to transfer the 401-K plan. The magistrate found wife in contempt for damaging the marital residence and personal property belonging to husband and Anthony, and for failing to return other items of personal property. The magistrate ordered wife lose "all her right, title and interest in and to the stock plan which was to be divided and provided to her." March 12, 1998 Magistrate's Decision at 9.
On April 22, 1998, wife filed objections to the magistrate's decision. Via Judgment Entry dated July 23, 1998, the trial court denied wife's objections and affirmed the magistrate's March 12, 1998 decision.
It is from this judgment entry wife appeals, raising the following assignments of error:
 I. THE COURT ERRED IN FINDING PLAINTIFF/APPELLANT IN CONTEMPT OF COURT FOR FAILING TO RETURN TO DEFENDANT/APPELLEE AND TO HER SON, A.J., ALL OF THE PERSONAL PROPERTY IDENTIFIED IN THE JUDGMENT ENTRY AND DECREE OF DIVORCE AS DEFENDANT/APPELLEE'S PROPERTY.
 II. THE COURT ERRED IN FINDING PLAINTIFF/APPELLANT IN CONTEMPT OF COURT FOR DAMAGING ITEMS OF PERSONAL PROPERTY TO WHICH THE DEFENDANT/APPELLEE CLAIMED HE WAS ENTITLED.
 III. THE COURT ERRED IN FINDING THE PLAINTIFF/APPELLANT IN CONTEMPT FOR "DAMAGING THE PREMISES".
 IV. THE COURT ERRED BY IMPOSING THE SANCTION OF PENALIZING THE PLAINTIFF/APPELLANT FOR CONTEMPT OF COURT IN THE APPROXIMATE AMOUNT OF $19,000.00, BEING THE PORTION OF THE STOCK PLAN WHICH THE PARTIES HAD AGREED WOULD BE DISTRIBUTED TO THE PLAINTIFF/APPELLANT AND WHICH WAS SO ORDERED BY THE JUDGMENT ENTRY AND DECREE OF DIVORCE.
 V. THE COURT DID NOT HAVE JURISDICTION AND ERRED IN MODIFYING THE PROPERTY SETTLEMENT PROVISION INCORPORATED INTO THE JUDGMENT ENTRY AND DECREE OF DIVORCE BY FORFEITING AND DENYING TO PLAINTIFF/APPELLANT THE $19,000.00 SHARE OF THE STOCK PLAN DISTRIBUTED TO HER BY THE AGREED PROPERTY SETTLEMENT OF THE PARTIES WHICH HAD BEEN INCORPORATED INTO THE JUDGMENT ENTRY AND DECREE OF DIVORCE.
Any other facts relative to our discussion of wife's assignments of error shall be contained therein.
 I, II III
In her first, second, and third assignments of error, wife maintains the trial court erred in finding her in contempt for failing to return to husband all of the personal property identified in the divorce decree, for damaging husband's personal property, and for damaging the marital residence.
This Court will not reverse the decision of a lower court in a contempt proceeding absent a showing of an abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11. In order for this Court to find an abuse of discretion, we must find the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218.
In Windham Bank v. Tomaszezyk (1971), 27 Ohio St.2d 55, the Ohio Supreme Court held:
 Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.
 Id. at paragraph one of the syllabus.
Contempt may be classified as direct or indirect. In re:Purola (1991), 73 Ohio App.3d 306, 310. Direct contempt occurs in the presence of the court, while indirect contempt occurs outside its immediate presence. Id. "Contempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." Id. at 311. (Citation omitted). Criminal and civil contempt serve different ends within the judicial system, and are governed by different rules. Our initial inquiry in determining whether the trial court abused its discretion in finding wife in contempt, is whether the contempt was civil or criminal. Peebles v. Williams
(March 31, 1997), Erie App. No. E96037, citing, Cleveland v.Ramsey (1988), 56 Ohio App.3d 108, 110.
Civil contempt is designed to benefit the complainant and is remedial in nature. Purola, supra at 311. (Citation omitted). An individual charged with civil contempt must be permitted to appear before the court and purge himself of the contempt by demonstrating compliance with the court's order he is charged with violating. Id. at 312.
Criminal contempt is usually characterized by unconditional fines or prison sentences. Id. at 311. (Citation omitted). In the case of criminal contempt, there is no requirement the person charged be permitted to purge herself of the contempt.Brown v. Executive 200, Inc., (1980), 64 Ohio St.2d 250. The absence of an opportunity to purge oneself when charged with criminal contempt is appropriate because the purpose of criminal contempt is punitive. Id.
Wife argues the contempt is criminal because the trial court did not provide her with the opportunity to purge the contempt and because the primary purpose of the sanction was to punish her. Wife submits husband had to burden to prove she was guilty of contempt beyond a reasonable doubt and he failed to satisfy this burden.
We disagree with wife's characterization of the contempt as criminal. In the instant action, wife damaged personal as well as real property belonging to husband, and failed to return other items of personal property to husband pursuant to the divorce decree. In its July 23, 1998 Judgment Entry, the trial court noted, "the actions of [wife] caused serious loss" and "[t]he punishment fits the damaged suffered by [husband]." We find no evidence in the record to contradict the reasoning cited by the trial court for its finding of contempt. Because the purpose of the sanction was primarily designed to benefit husband through remedial means, the contempt is civil.
The burden of proof in a civil contempt proceeding is clear and convincing evidence. Brown v. Executive 200, Inc. (1980),supra. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re:Ayer (May 21, 1997), Hamilton App. No. C-960488, unreported. (Citation omitted).
Wife asserts the magistrate did not apply the clear and convincing standard. Specifically, wife refers to the magistrate's statement, "For that reason several decisions contained herein were made not because they were proven beyond a preponderance of the evidence, but because the side with the burden of proof was so lacking in credibility that the burden of proof was not sustained." Magistrate's March 12, 1998 Decision at 2.
Wife would have us conclude from the above cited language the magistrate applied an incorrect burden of proof, namely, a preponderance of the evidence, in reaching his ultimate conclusion she was in contempt. Although we find the magistrate's language confusing and nebulous with respect to what portions of the decision he was referring and to which party he felt had the burden of proof, such language does not affirmatively demonstrate the magistrate failed to apply the clear and convincing standard in rendering his final decision. More importantly, when independently reviewing the magistrate's decision, and in the absence of an affirmative demonstration the trial court applied an incorrect standard, given the presumption regularity, we presume the trial court applied the correct standard. Although the trial court does not explicitly state the burden it applied, the court found "the Magistrate's Decision is wholly supported by competent, credible evidence and fully justified by the facts as found to be true." July 23, 1998 Judgment Entry at 4, unpaginated. This language indicates the evidence produced in the mind of the trial court a firm belief or conviction wife was in contempt.
Upon review of the entire record in this matter and the facts as set forth supra, we find there was clear and convincing evidence presented to establish wife caused the damage to the property. Accordingly, we find the trial court did not abuse its discretion in finding wife in contempt.
We note wife takes issue with the trial court's failure to provide her with an opportunity to purge herself of the contempt. Because wife caused physical damage to personal and real property, we find she had no ability to purge herself of the contempt beyond payment for the damage. Wife submits she could have returned "the RCA TV, 1.2 of the family pictures, and Anthony's gun, which she testified were still in her possession." Appellant's Brief at 14. Wife was aware these items belonged to husband pursuant to the divorce decree and she had the opportunity to return the items before the trial court issued its July 23, 1998 Judgment Entry. Wife failed to take advantage of this opportunity. Given the acrimonious nature of this case, we question whether wife would have returned the items even if the trial court ordered her to do so. Nevertheless, in light of wife's conduct, much of which could not be undone, we find no fault with the trial court's decision not to allow piecemeal purging.
Wife's first, second, and third assignments of error are overruled.
 IV
In her fourth assignment of error, wife contends the trial court erred in sanctioning her in the amount of approximately $19,000 for the damage to the marital residence, for the damage or destruction of husband's and Anthony's personal property, and for the failure to return to husband other items of personal property.
Judicial sanctions for civil contempt will not be reversed absent a showing of an abuse of discretion on the part of the trial court. Burchett v. Miller (1997), 123 Ohio App.3d 550,552, citing State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11.
In her brief to this Court, wife asserts "the penalty of $19,000 should not have been imposed because the finding of contempt should not have been made." Brief of Appellant at 18. Wife continues, "even if the contempt charge is upheld to penalize plaintiff/appellant the amount of $19,000 is not justified by the facts or the findings when defendant/appellee failed to proved damages." Id. Wife maintains the imposition of such a penalty is arbitrary, unreasonable and unconscionable.
At the contempt hearing, husband offered numerous exhibits of the estimates he obtained for the repair of the damaged real property, and the replacement of damaged and missing personal property. At the end of the second day of the hearing, wife objected to the admission of these exhibits, which the magistrate sustained in his March 12, 1998 decision.[4] However, wife did not object to husband's testifying he suffered damages in the amount of $12,081.84.
The magistrate found wife "caused the damages to the premises and the contents of the residence before her departure." Magistrate's March 12, 1998 Decision at 4. Sustaining wife's objection to the admission of the exhibits, the magistrate asked, "what is [husband's] remedy, since the costs and damages testimony has been essentially excluded." Id. The magistrate continued, "cause is not the issue, the amount of the damages is and the Magistrate has reservations that [husband] had sustained his burden of proof on that issue." Id. at 6. Because of wife's actions, the magistrate recommended, "as a penalty [wife] loses all of her right, title, and interest in and to the stock plan which was to be divided and provided to her."Id. at 9.
Wife filed objections to the magistrate's decision, taking issue, in part, with the magistrate's granting husband the entire stock plan including the $19,000 wife was awarded pursuant to the divorce decree. In her objections, wife maintained husband had the burden of proof as to the amount of damages and, as noted by the magistrate, husband failed to meet this burden.
After reviewing the magistrate's decision, wife's objections to the decision, the memoranda of both parties, the transcript of the magistrate's proceedings including all exhibits and the trial court's own record, the trial court denied wife's objections and affirmed the magistrate's decision. Regarding the damages testimony, the trial court noted, "while some of the damage evidence is circumstantial, it is sufficient to support Magistrate's Decision. The punishment fits the damage suffered by [husband] and is supported by the testimony and exhibits." July 23, 1998 Judgment Entry at 3, unpaginated.
In light of any filed objections, when independently assessing the facts and conclusions contained in the magistrate's report, a trial court must undertake the equivalent of a de novo determination. DeSantis v. Soller
(1990), 70 Ohio App.3d 226, 232. Despite the magistrate's findings, the trial court was free to reevaluate the evidence presented at the contempt hearing.
Although Wife objected to the admission of husband's exhibits, she did not object to husband's oral testimony regarding the amount of damages he sustained. On cross examination of husband, wife could have developed husband's failure to lay a proper foundation in support of his testimony as to the amount of his damages. Upon review, the trial court was free to consider husband's testimony, even though the exhibits were not admitted into evidence.
In its judgment entry, the trial court does not make a specific finding as to the amount of damages suffered by husband. Upon review of the record in this matter, we find the total amount of damages to be $12,081.84, as calculated from husband's oral testimony.[5]
Because the amount of damages is substantially less than the value of wife's share of the stock plan, and in the absence of any additional evidence to support the difference, we find the trial court abused its discretion in sanctioning wife in the amount of $19,000.
Appellant's fourth assignment of error is sustained.
Accordingly, we vacate only the portion of the judgment entry relative to the sanction for wife's contempt and remand the matter to the trial court to effectuate the transfer of the stock plan, less the $12,081.84 offset, in accordance with this opinion.
 V
In her final assignment of error, appellant asserts the trial court erred in modifying the property settlement provision of the Judgment Entry/Decree of Divorce because the court did not have jurisdiction over the issue. Specifically, appellant asserts the trial court does not have authority under R.C.3105.171 to modify the terms of a divorce decree.
R.C. 3105.171 (I) provides:
 A division or disbursement or distributive award made under this section is not subject to future modification by the Court.
Paragraph 12 of the Judgment Entry/Decree of Divorce reads:
 [Husband] has also accumulated an interest in a stock plan through his place of employment. [Wife] shall be entitled to $19,000 of the plan as of May 23, 1997. In the event that either party removes funds from the plan, that individual party shall be responsible for the payment of any and all taxes due and owning on his or her portion. The Court shall retain jurisdiction in order to effectuate the division of the Stock Plan.
(Emphasis added).
We agree with wife a trial court may not modify a division, disbursement, or distributive award. However, in the instant action, the trial court made its order executory. Because the trial court retained jurisdiction to effectuate the division of the stock plan, we find the trial court had the authority to offset the damages suffered by husband as a result of wife's actions from her share of the division of the marital property.
Wife's fifth assignment of error is overruled.
The judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division, finding wife in contempt is affirmed and the portion of the judgment entry sanctioning wife $19,000 is vacated and the matter is remanded to the trial court to effectuate a transfer of the stock plan, less the $12,081.84 offset, in accordance with this opinion.
By: Hoffman, J. Gwin, P.J. and Farmer, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division is affirmed in part, and reversed and remanded in part. Costs to be divided equally.
---------------------------
---------------------------
 --------------------------- JUDGES
[1] Husband was awarded the marital residence as part of the property division.
[2] Neither husband nor wife appealed the trial court's ultimate findings of fact and conclusions of law relative to wife's contempt allegations. As such, this Court will not relate the facts surrounding those claims.
[3] The trial court issued a Civil Protection Order on June 28, 1996, enjoining husband from the marital residence as well as restraining husband from having any contact with wife. Husband brought the deputy to the residence because the CPO was still in effect and he did not wish to violate the order.
[4] Husband did not file an objection to this portion of the magistrate's ruling.
[5] Because the magistrate found husband's estimate exhibits inadmissable, the trial court should not have considered said evidence in its determination on the issue of damages. However, we note husband's oral testimony was sufficient to establish damages in the amount of $12,081.84.