JUDGMENT: Judgment affirmed
OPINION
Defendant-Appellant, Wilbur C. Keller, appeals a judgment of conviction and sentence from the Court of Common Pleas of Seneca County rendered pursuant to a jury verdict of guilty as to one count of kidnapping and one count of gross sexual imposition. For the reasons expressed in the following opinion, we affirm the trial court's decision.
On January 22, 1999, twelve-year-old Kyrie Neeley began walking home from a neighbor's residence where she had been playing with friends until approximately 11 p.m. The distance between Kyrie's and the neighbors' home is about 100 yards. As Kyrie began to approach her own yard, a man attacked her from behind, grabbing her around the head and face, lifting her off the ground and dragging her to her own backyard. In the midst of the attack, the man repeatedly told Kyrie to be quiet. He also told the girl that he wanted to touch her vaginal area.
Once the two were behind the victim's house, the man rubbed Kyrie's genital area while she was still clothed. Because the attacker had to release his grip to touch the victim's vaginal area, Kyrie was eventually able to struggle free. She began to scream and ran inside her parents' home. Kyrie's parents found her crying hysterically as she attempted to report these events. Kyrie described her attacker as a white male with a stocky build who was wearing a long dark coat with what appeared to be a hood. The victim's father ran outside to see if he could catch the assailant, but he couldn't find anybody in the immediate area. Mr. and Mrs. Neeley then contacted the Tiffin Police Department.
Several officers were instantly dispatched to the scene. One of the officers was instructed to patrol the surrounding area to look for anybody who fit the description that Kyrie had provided. Shortly thereafter, Appellant was found approximately six blocks from the Neeley residence. He was wearing a long dark coat, rubber boots and muddy jeans. Appellant also appeared to be sweating heavily. Upon being questioned about his activities that evening, Appellant could not provide the officer with a straightforward answer. He merely stated that he had been in a fight "somewhere" earlier that night.
Due to suspicions that Appellant may have been involved in the attack, Officer Jan Fabian escorted Kyrie and her mother to the area where Appellant was located. Although Kyrie could not make a positive physical identification because the attack occurred from behind, she did make a positive voice identification, stating that Appellant sounded like the assailant.
The Seneca County Grand Jury subsequently indicted Appellant on one count of kidnapping and one count of gross sexual imposition, violations of R.C. 2905.01(A)(4) and R.C.2907.05(A)(4), respectively. Appellant pled not guilty to the charges and the matter was set for a jury trial, which commenced in April 1999. After hearing all of the evidence, the jury returned guilty verdicts as to both charges contained in the indictment.
Appellant was then sentenced to serve ten years on the kidnapping charge and five years on the gross sexual imposition charge. The sentences were ordered to run consecutively. In addition to the prison sentence, Appellant was adjudicated a sexual predator pursuant to R.C. Chapter 2950. This timely appeal followed wherein Appellant asserts three assignments of error for our review and consideration.
Assignment of Error No. I
 In an abuse of its discretion, the trial court reversibly erred to the harmful prejudice of the Defendant/Appellant, when it overruled defense objection to testimonies of police officers indicating no past police sightings of Defendant/Appellant in the general vicinity where the crimes occurred, until the night of the crimes. Said prejudicial police testimonies did violate Evidence Rules 401, 402, 403(A) and 404 and did deny the Defendant/Appellant a fair jury trial, equal protection of the laws, and due process of law, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.
Appellant argues that the trial court erred in admitting testimony from several Tiffin Police Officers who stated that over the years they had seen Appellant on a regular basis in the downtown area, but they had never seen him in the neighborhood where the attack on Kyrie Neeley occurred, except for the night of January 22, 1999. Appellant maintains that this testimony was admitted in violation of several different rules of evidence.
Appellant first argues that the officers' testimony regarding his usual whereabouts was admitted in violation of Evid.R. 401 and 402.
Evid.R. 401 states that:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Evid.R. 402 provides:
 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.
It is well settled that the decision to admit or exclude evidence is left to the sound discretion of the trial court.State v. Heinish (1990), 50 Ohio St.3d 231, 239; State v.Sage (1987), 31 Ohio St.3d 173, 180. Accordingly, we will not reverse such a decision unless an abuse of discretion has been demonstrated. An abuse of discretion is a decision that can be characterized as arbitrary, unreasonable or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In the case sub judice, we cannot conclude that the trial court abused its discretion in permitting the State of Ohio to question the officers on the issue of Appellant's typical whereabouts. The fact that it was unusual for Appellant to be in the neighborhood where the instant crime occurred makes the determination of his identity more probable than it would be without that evidence.
Nevertheless, Appellant maintains that the evidence should have been excluded because its admission led to a violation of his right to due process of law, as guaranteed by theFourteenth Amendment of the United States Constitution. In support of this assertion, Appellant cites to State v. Jacobozzi (1983), 6 Ohio St.3d 59,61, wherein the Supreme Court of Ohio held that since due process requires the state to prove all elements of an offense beyond a reasonable doubt, the prosecution may not use circumstantial evidence to prove an essential element of a crime unless such evidence precludes "all reasonable theories of innocence * * *." In deciding Jacobozzi, the Court relied on similar decisions rendered in the previous opinions of State v.Kulig (1974), 37 Ohio St.2d 157 and State v. Sorgee (1978),54 Ohio St.2d 464.
We find Appellant's reliance upon this line of cases to be wholly misguided. We must initially point out that Kulig was expressly overruled by State v. Jenks (1991), 61 Ohio St.3d 259
wherein the Supreme Court of Ohio stated, at paragraph one of the syllabus:
 Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence * * *.
Thus, Appellant's argument that the rationale announced in Kulig
should be applied herein is not well taken.
Next, we must also note that even if the Kulig rule were still considered valid law, it would not apply under the circumstances set forth in this case. More specifically, it has been held that the rule established in Kulig was limited to situations where the prosecution relies exclusively upon circumstantial evidence to prove the elements of a particular offense. See, State v. Italiano (1958), 18 Ohio St.3d 38, 41. A review of the record in the instant matter demonstrates that the State of Ohio utilized both circumstantial and direct evidence to prove its case. Indeed, Kyrie Neeley identified Appellant as her attacker upon hearing his voice. Therefore, even if we were still mandated to follow the Kulig rule, it would simply not apply in this matter since the State of Ohio introduced both direct and circumstantial evidence to support its case. Therefore, we find that the officers' statements did not violate Evid.R. 401 or 402.
Alternatively, Appellant argues that the officers' testimony violated Evid.R. 403(A). This evidentiary rule provides that:
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
With respect to the question of whether the value of certain evidence is outweighed by the danger of unfair prejudice, it is axiomatic that an appellate court will not interfere with the trial court's determination absent an abuse of discretion. Statev. Allen (1995), 73 Ohio St.3d 626, 633. We conclude that the trial court did not abuse its discretion in admitting the officers' testimony. This is especially true given the fact that the testimony was limited in that the officers were not permitted to speak about specific instances of conduct or why they encountered Appellant so often. The officers merely testified that while out on routine patrols, they would see Appellant in the downtown area on a frequent basis. Likewise, the witnesses stated that a routine patrol would not include encountering Appellant in the area in which the offenses occurred. For these reasons, Appellant's argument that the evidence should have been excluded pursuant to Evid.R. 403(A) is not well taken.
For his final evidentiary argument, Appellant asserts that the officers' testimony violated Evid.R. 404(A) and (B). Evid.R. 404(A) generally provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion * * *." Appellant argues that the officers' testimony regarding Appellant's usual whereabouts was, in essence, evidence of a character trait. We disagree. Character traits are an individual's inherent qualities; for example, a person's propensity to act in a peaceful, violent or truthful manner. Here, the officers' unrefuted testimony demonstrated only that Appellant was frequently seen in the downtown area. This is not evidence of Appellant's character and we may not speculate as to what inferences, if any, a jury may have drawn from these limited statements. Thus, Evid.R. 404(A) was not violated.
Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Although Appellant argues that the officers' testimony allowed the jury to infer that he must have committed other crimes or wrongful acts because of the frequent police observation, we cannot agree. As we have already stated, the record clearly reveals that the prosecution did not pose questions about specific instances of Appellant's conduct or why he was observed on a regular basis. Thus, if we were to reverse the trial court's judgment and rule that this evidence should have been excluded pursuant to Evid.R. 404(B), such a determination would be based upon nothing but speculation, much like Appellant's argument herein.
Due to the foregoing conclusions, Appellant's first assignment of error is overruled.
Assignment of Error No. 2
 The * * * rebuttal closing argument from the State is both highly improper and harmfully prejudicial, and as such, does rise to the level of plain error by violating Crim.R. 52(B), and by denying the Defendant/Appellant's fundamental substantive rights to a fair jury trial and to due process of law as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. * * *.
The Supreme Court of Ohio has ruled that prosecutors should be granted wide latitude in closing arguments. State v. Maurer
(1984), 15 Ohio St.3d 239, 269. A prosecutor's closing remarks are generally not considered prejudicial unless they are "so inflammatory as to render the jury's decision a product solely of passion and prejudice." State v. Williams (1986), 23 Ohio St.3d 16,20.
In the instant matter, Appellant urges this court to find that the remarks made by the prosecutor during the rebuttal closing argument were prejudicial. As part of his closing argument, the prosecutor posed the following to the jurors:
 Imagine if you have child a 12 year old daughter. And a person has been accused, as Mr. Keller has been. And this person that has been accused is your friend. Somebody like you. You care about. Because if it's somebody you don't care about it's easy to say, don't [sic] want him around my kids. Imagine it's somebody you care about, a friend of yours. And you, and you have the evidence that we have presented today and yesterday.
 * * * Would you let that person near your 12 year old girl? If you can say, yes, then you vote not guilty. If you say, no, vote guilty.
Appellant specifically takes issue with the last three sentences because he claims that they inflamed the passions of the jury and denied Appellant the right to a fair trial.
We note, however, that counsel for the defense failed to enter an objection to these remarks. Accordingly, we must review the issue under the plain error standard. State v. Cooey (1989),46 Ohio St.3d 20, 31. Plain error does not exist unless, in the absence of that error, the outcome of the trial clearly would have been otherwise. Id. After a thorough review of the record, we are not convinced that Appellant would have been acquitted, but for the above quoted remarks.
Appellant's second assignment of error is overruled.
Assignment of Error No. 3
 In denial of the fundamental guarantees of the Sixth and Fourteenth Amendments to the Constitution of the United States, it was ineffective assistance of counsel to not object to the * * * harmfully prejudicial prosecutor's statement in rebuttal closing argument before the jury * * *.
In his third assignment of error, Appellant argues that defense counsel's failure to object to the aforementioned remarks made during the prosecutor's rebuttal closing argument constitutes ineffective assistance of counsel. The Supreme Court of Ohio has set forth the following two-prong test to determine whether a defendant's right to effective assistance of counsel has been violated:
 First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.
State v. Bradley (1989), 42 Ohio St.3d 136, 141-142; Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064. Further, in order to demonstrate prejudice, an appellant must show that a reasonable probability exists that the result of the trial would have been different had it not been for counsel's mistakes.State v. Bradley, 42 Ohio St.3d at 143.
Even if we were to assume, for the sake of argument, that Appellant's trial attorney violated an essential duty by failing to object to the prosecutor's remarks, we are not persuaded that Appellant was denied his right to effective assistance of counsel. Appellant cannot demonstrate that the jury would have rendered an acquittal had defense counsel objected to the previously discussed portions of the prosecutor's closing argument. Thus, Appellant's argument is not well taken.
Appellant's third assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT, P.J., and SHAW, J., concur.